# EXHIBIT A

Sharon S. Moyer (No. 013341)
Sharon.Moyer@SacksTierney.com
Adrian L. Barton (No. 025359)
Adrian.Barton@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610.

Attorneys for Plaintiff



COPY

OCT - 8 2010

MICHAEL K. JEANES, CLERK
M. MEJIA
DEPUTY CLERK

## IN THE SUPERIOR COURT OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

NANCY SANDIG, an individual,

Plaintiff,

v.

DONALD J PLINER OF FLORIDA, INC., a Florida corporation, and JOHN and JANE DOES 1-10; ABC ENTITIES 1-10,

Defendant.

No. CV2010-096086

CM
CP51623
10/13/10
11:45AM

**COMPLAINT**

For its Complaint against Defendant, Plaintiff alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Nancy Sandig is an individual domiciled and residing in Maricopa County, Arizona.

2. Defendant Donald J Pliner of Florida, Inc. ("DJP") is a Florida corporation doing business in Maricopa County, Arizona.

3. The true names or capacities whether individual, corporate, associate, or otherwise of Defendants designated herein as John and Jane Does 1-10 and ABC Entities 1-10 are presently unknown to Plaintiff at this time and Plaintiff, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that the fictitious Defendants designated herein are partners, affiliated entities, servants, agents, employees, representatives, successors, alter egos or assigns of the named

773501

1  Defendant or persons acting in concert with the said Defendant with reference to the
2  allegations pleaded herein and are liable to Plaintiff by reason thereof. Plaintiff will seek
3  leave to amend this Complaint to set forth the true names and capacities of the fictitiously
4  named Defendants after the same have been ascertained by Plaintiff.

5      4.    The amount in controversy in this lawsuit exceeds the minimum jurisdictional
6  limits of the Court.

7      5.    Defendant DJP caused actions to occur in Maricopa County, Arizona out of
8  which Plaintiff's claims arise.

9      6.    This Court has jurisdiction of the subject matter of this action and of the
10 parties pursuant to A.R.S. § 44-1798.04 and other applicable law.

11     7.    Venue is proper in this Court pursuant to A.R.S. § 12-401.

12 **GENERAL ALLEGATIONS**

13     8.    DJP is a Florida corporation that manufactures and sells designer footwear
14 and accessories across the world.

15     9.    Donald J. Pliner is the sole owner of DJP, and he is the individual who
16 designs DJP shoes and accessories.

17     10.    Until November 11, 2009, when she was summarily terminated without
18 notice or cause, Ms. Sandig enjoyed a personal and professional relationship with Donald J.
19 Pliner and his family for thirty years.

20     11.    Prior to working with DJP, Ms. Sandig built numerous relationships, and
21 enjoyed an excellent reputation in the footwear and accessories industry ("Industry").

22     12.    In 1996, Donald J. Pliner, having known Ms. Sandig, both personally and
23 professionally for many years through her involvement in the Industry, recruited her to
24 work as a Sales Representative for DJP in the capacity of an independent contractor.

25     13.    For the next 13 years, Ms. Sandig worked tirelessly as the DJP west coast
26 Sales Representative.

27     14.    Ms. Sandig was an incredible Sales Representative for DJP. In just her first
28 year with DJP, Ms. Sandig helped transform DJP into a major player in the Industry.

773501

15. Ms. Sandig secured the business of 53 Nordstrom stores, resulting in a 100% increase in sales in her first year alone, and causing the entire Nordstrom company to carry the shoes throughout the country (although she was only paid for her territory).

16. Thereafter, Ms. Sandig continued to increase sales for DJP through adding more Nordstrom stores, other department stores, internet accounts, and many independent accounts.

17. By May 2005, Ms. Sandig was instrumental in reforming and growing the business of Macy's West, among many other accounts, which proved to be very profitable for DJP.

18. Ms. Sandig also convinced Donald J. Pliner to branch out into internet distribution, despite his objections.

19. Ms. Sandig then personally secured Zappos.com as a DJP client, which again significantly increased sales and international exposure for DJP, and which continues to be a profitable account today.

20. Ms. Sandig worked directly with Donald J. Pliner to assist with DJP product design.

21. Ms. Sandig helped develop numerous creative and ultimately successful design concepts over the years.

22. Ms. Sandig's innovative ideas and input with respect to the spring 2010 collection resulted in one of the most successful product lines that DJP has enjoyed in recent years.

23. Ms. Sandig also provided several strategies to cross-promote DJP's Peace for the Children Foundation, and contributed financially to the foundation.

24. Ms. Sandig volunteered at every Shoe Show that DJP attended to arrange elegant catering for the many valued clients in attendance, and always worked to represent the DJP image in the most favorable light, in addition to being a top producing sales representative.

773501

3

25. Despite all of Ms. Sandig's personal and professional contributions to the growth and success of DJP over the past 13 years, she was summarily terminated on November 11, 2009 without cause.

26. Ms. Roxanne Ehrenberg, then President and Chief Executive Officer of DJP, notified Ms. Sandig of her termination.

27. At the time Ms. Ehrenberg notified Ms. Sandig of her termination, she advised that DJP would pay Ms. Sandig's October and November 2009 expenses, and an additional $10,000 that would not be charged against her commission. The offer had no conditions.

28. At the time of her termination, Ms. Sandig had booked substantial sales that would be delivered through June 2010 for which she expected to be paid 5% commission.

29. From her termination date in November 2009 until now, Ms. Sandig repeatedly requested the information necessary for her to determine whether her commissions were accurately calculated and paid. On November 11, 2009, Ms. Sandig was, without notice, shut out of any and all needed reports and information on her computer.

30. DJP refused, however, to provide copies of invoices for the sales that Ms. Sandig made.

31. DJP likewise refused to pay Ms. Sandig the $10,000 that would not be charged against her commissions. Instead, DJP charged the $10,000 against her commissions.

32. DJP likewise advised Ms. Sandig that it had adopted a new policy, effective January 2010, to withhold 20% of commissions to cover returns, the balance of which amount would be paid to Ms. Sandig by October 31, 2010. This policy was put into effect after Ms. Sandig's termination when historically her highest monthly return percentage was 7%.

773501

33. While imposing new policies regarding compensation upon Ms. Sandig to which she never agreed, DJP refused to allow Ms. Sandig to work with her customers to remedy any return or cancellation issues.

34. This refusal was particularly important because many times a customer simply wants a different color shoe than ordered, there is a fit or quality problem, or some other minor adjustment. These issues were not dependent upon the actual selling of the product. Ms. Sandig was very concerned that, as to these kinds of changes, DJP was crediting the replacement product to other sales representatives. In fact, it has historically been highly unusual for DJP to accept any returns without a replacement unless DJP would be receiving credit from the respective factories.

35. Additionally, even where a customer wishes to completely cancel an order, given Ms. Sandig's long history and personal relationships with her customers, she was most often able to convince her customers to place a replacement order for a different product. Ms. Sandig was very concerned that, as to these kinds of changes, DJP was crediting the replacement product to other sales representatives or failing to make any attempt at all to secure a replacement order.

36. Crediting replacement orders as described above to other sales representatives would benefit DJP because it had significantly changed its commission structure, effective January 1, 2010, the result of which was to significantly reduce the amount of wages earned by DJP sales representatives and increase profits to DJP.

37. Failing to make an attempt to secure a replacement order where cancellations occurred likewise would benefit DJP because then it could avoid paying Ms. Sandig her commissions at the straight 5% commission rate it had recently abandoned in favor of a compensation scheme that was significantly less beneficial to DJP sales representatives.

38. Ms. Sandig ultimately confirmed all invoices for her orders with one of her largest customers, Zappos.com. When comparing those invoices to the amount of commission that Ms. Sandig was paid, it was evident that DJP had not paid all of Ms. Sandig's commission on her Zappos.com sales.

773501

39. DJP refused to account for this discrepancy in the amount of Zappos.com sales vs. the amount of commission paid to Ms. Sandig, and has further failed to fully account at all for Ms. Sandig's sales to other customers.

### CLAIMS FOR RELIEF

### COUNT ONE

(Violation of A.R.S. § 44-1798 *et. seq.*)

40. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

41. A.R.S. § 44-1798 *et. seq.* addresses Sales Representative contracts.

42. A.R.S. § 44-1798.01(B) states that "[t]he principal shall provide each sales representative with a signed copy of the contract. The principal shall obtain a signed receipt for the contract from each sales representative."

43. A.R.S. § 44-1798.01(A) provides that the written sales representative contract shall "set forth the method by which the sales representative's commission is to be computed and paid."

44. The method by which Ms. Sandig's sales representative commission was to be computed and paid was memorialized in a written employment offer presented to Ms. Sandig in October 2009. That offer described the then-existing relationship between the parties and clearly stated that Ms. Sandig was paid 5% commissions for sales of DJP footwear and accessories.

45. DJP violated A.R.S. § 44-1798.02(A)(2) when it failed to pay Ms. Sandig all commissions that became due after her termination within 14 days, including the 20% that DJP unilaterally decided to withhold beginning in January 2010.

46. As a result of DJP's violations of A.R.S. § 44-1798 *et. seq.*, Ms. Sandig has been damaged in an amount to be proven at trial, plus pre and post judgment interest. In the event of default, on information and belief, Ms. Sandig is owed at least $149,000, plus pre and post judgment interest.

773501

47. Pursuant to A.R.S. § 44-1798.02(C), DJP is liable for treble damages for its failure to pay Ms. Sandig commissions that became due after her termination within 14 days, including the 20% in commissions that DJP unilaterally decided to withhold beginning in January 2010.

48. Pursuant to A.R.S. § 44-1798.02(D), DJP is liable to Ms. Sandig for the fees and costs she incurred in having to file this lawsuit. In the event of default, on information and belief, this amount is anticipated to be $10,000.

## COUNT TWO

### (Unjust Enrichment)

49. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

50. Pleading in the alternative, DJP has been unjustly enriched at the detriment of Ms. Sandig as a result of its improper retention of commissions rightfully owing to Ms. Sandig for work she performed at DJP's request and with DJP's full knowledge.

51. As a result of DJP's actions, Ms. Sandig is entitled to recover all monies improperly retained, including the 20% of commissions DJP unilaterally decided to withhold beginning in January 2010, with pre and post judgment interest.

52. In the event of default, on information and belief, DJP was unjustly enriched in the amount of at least $149,000, plus pre and post judgment interest.

## COUNT THREE

### (Breach of Oral Contract – Sales Representative Agreement)

53. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

54. Pleading in the alternative, Ms. Sandig and DJP had an oral contract wherein Ms. Sandig would act as DJP's west coast sales representative in the capacity of independent contractor.

55. That oral contract provided that Ms. Sandig would be paid 5% on all sales she made on behalf of DJP to her customers.

773501

56. The oral agreement constitutes a binding and enforceable agreement.

57. Contrary to the oral agreement, DJP has failed to pay Ms. Sandig her commissions due and owing from sales she made on behalf of DJP to her customers, including the 20% of commissions DJP unilaterally decided to withhold beginning in January 2010, plus pre and post judgment interest.

58. No event occurred excusing DJP's performance under the oral agreement.

59. DJP's actions constitute a breach of the parties' oral agreement.

60. As a result of the actions alleged herein, Ms. Sandig has been damaged in an amount to be proven at trial, plus pre and post judgment interest.

61. In the event of default, on information and belief, Ms. Sandig is owed at least $149,000, plus pre and post judgment interest.

## COUNT FOUR

### (Breach of the Covenant of Good Faith and Fair Dealing)

62. Plaintiff incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

63. Ms. Sandig and DJP are parties to either a written or oral sales representative agreement.

64. As in every contract, the sales representative agreement contains an implied covenant of good faith and fair dealing.

65. The implied covenant precluded the parties to the sales representative agreement from taking any actions to deprive the other party of her or its reasonably expected benefits thereunder, whether or not those benefits were expressly in the agreement.

66. Since terminating its relationship with Ms. Sandig, DJP has refused to permit Ms. Sandig to address any customer concerns that could affect the amount of commissions that she earns under the sales representative agreement, including concerns regarding returns or cancellations.

773501

67. Further, on information and belief, DJP has credited returns and cancellations from Ms. Sandig's customers to Ms. Sandig, but has failed to credit any replacement products sold in direct relation to any such returns or cancellations to Ms. Sandig.

68. Further, DJP has refused to provide simple documentation of how Ms. Sandig's commissions have been calculated since November 2009, thereby depriving her of the ability to confirm that she has received the benefit of her bargain (as DJP summarily claims).

69. Further DJP unilaterally decided to withhold 20% of Ms. Sandig's wages starting in January 2010, thereby deliberately depriving Ms. Sandig of wages due without her consent.

70. As a result of DJP's conduct, Ms. Sandig has been damaged in an amount to be proven at trial, plus pre and post judgment interest. In the event of default, on information and belief, Ms. Sandig is owed at least $149,000, plus pre and post judgment interest.

## COUNT FIVE

**(Violation of A.R.S. § 23-350 *et. seq.*)**

71. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

72. Pleading in the alternative, Ms. Sandig was, at minimum, an employee of DJP as defined by A.R.S. §23-350.

73. In violation of A.R.S. §§23-352 and 353, DJP has failed to pay wages as defined by A.R.S. §23-350, which are due and owing to Ms. Sandig from approximately November 2009 through June 2010, including withholding 20% of her wages starting in January 2010.

74. As a result of DJP's actions, Ms. Sandig is entitled to compensatory damages in an amount to be proven at trial, plus pre and post judgment interest. In the event of default, on information and belief, Ms. Sandig is owed at least $149,000, plus pre and post judgment interest.

773501

75. Pursuant to A.R.S. §23-355, Ms. Sandig is entitled to recover treble the amount of unpaid wages owed to her.

### COUNT SIX

### (Declaratory Judgment Pursuant to A.R.S. §§ 12-1831 to -1846)

76. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

77. Ms. Sandig has not been paid all of the commissions that are due her from DJP.

78. DJP contends that Ms. Sandig has received all of the commissions that are due her from DJP.

79. A dispute exists regarding whether Ms. Sandig has been paid all of the commissions that are due her from DJP.

80. Justifiable controversies exist that are ripe for adjudication.

81. The Court's adjudication of these issues, and related issues, will resolve the parties' disagreement as to their relative rights and obligations with respect to whether Ms. Sandig is entitled to additional commissions.

82. Ms. Sandig is entitled to a declaratory judgment pursuant to, *inter alia*, A.R.S. § 12-1832.

83. Ms. Sandig seeks a declaration of the relative rights and responsibilities of the parties, which will aid in resolving their other claims herein.

### COUNT SEVEN

### (Accounting)

84. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

85. Ms. Sandig must necessarily rely entirely upon DJP to properly calculate the commissions due her, and to provide documentation supporting those calculations.

773501

86. Upon request by Ms. Sandig, DJP has refused to provide the documentation supporting the amount of commissions that have been paid to her since November 2009.

87. Ms. Sandig is entitled to an accounting of all transactions in regard to sales that she made for DJP and the parties' respective interests therein.

## COUNT EIGHT

### (Breach of Oral Contract – Draw Payments)

88. Ms. Sandig incorporates herein by reference all allegations contained in her complaint as if fully stated herein.

89. On November 11, 2009, DJP, through Roxanne Ehrenberg, offered Ms. Sandig $10,000 in draws that would not be charged against her commissions, which offer Ms. Sandig accepted.

90. The oral agreement constitutes a binding and enforceable agreement.

91. Contrary to the oral agreement, DJP has failed to pay Ms. Sandig the $10,000 promised after Ms. Sandig acted in reliance on DJP's promise.

92. No event occurred excusing DJP's performance under the oral agreement.

93. DJP's actions constitute a breach of the parties' oral agreement.

94. As a result of DJP's actions alleged herein, DJP is liable to Ms. Sandig for $10,000, plus pre and post judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Sandig prays for relief against DJP as follows:

A. For compensatory damages against DJP in an amount to be proven at trial, but in the event of default, an amount of at least $149,000;

B. For treble damages pursuant to A.R.S. § 44-1798.02(C) or A.R.S. § 23-355;

C. For $10,000;

D. For her reasonable attorneys' fees and costs pursuant to, *inter alia*, A.R.S. §§ 12-341, 12-341.01, 44-1798.02(D) and any other applicable authority, which in the event of default, are expected to be at least $10,000;

773501

11

1     E.    For a declaration regarding the parties' relative rights and obligations in regard to sales made on behalf of DJP by Ms. Sandig;

    F.    For an accounting to aid in establishing the parties' relative rights and obligations in regard to sales made on behalf of DJP by Ms. Sandig;

    G.    For pre and post judgment interest at the legal rate; and

    H.    For such other, different, and further relief the Court deems just and proper under the circumstances.

DATED this 8th day of October, 2010.

SACKS TIERNEY P.A.

By: _Adrian L. Barton_
Adrian L. Barton
Attorneys for Plaintiff

**ORIGINAL** of the foregoing filed this 8th day of October, 2010, with:

Clerk of the Court of the
Maricopa County Superior Court
101/201 W. Jefferson Street
Phoenix, Arizona 85003

**COPY** of the Foregoing mailed this 8th day of October, 2010, to:

_Silvia Miranda_

773501

12

```
Sharon S. Moyer (No. 013341)
Sharon.Moyer@SacksTierney.com
Adrian L. Barton (No. 025359)
Adrian.Barton@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610.

Attorneys for Plaintiff
```

COPY

OCT - 8 2010

CM
CPS1623
10/13/10
11:45AM

IN THE SUPERIOR COURT OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| NANCY SANDIG, an individual, | |
|---|---|
| Plaintiff, | No. CV2010-096086 |
| v. | **CERTIFICATE OF COMPULSORY ARBITRATION** |
| DONALD J. PLINER OF FLORIDA, INC., a Florida corporation, | |
| Defendant. | |

Pursuant to Rule 30(a), Arizona Rules of Civil Procedure, Plaintiff Nancy Sandig, hereby demands trial by jury on all issues.

DATED this ___8th___ day of October, 2010.

SACKS TIERNEY P.A.

By: _Adrian L. Barton_
Adrian L. Barton
Attorneys for Plaintiff

**ORIGINAL** of the foregoing filed
this ___8th___ day of October, 2010, with:

Clerk of the Court of the
Maricopa County Superior Court
101/201 W. Jefferson Street
Phoenix, Arizona 85003

By: _Silvia Miranda_

773365

Sharon S. Moyer (No. 013341)
Sharon.Moyer@SacksTierney.com
Adrian L. Barton (No. 025359)
Adrian.Barton@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610.

Attorneys for Plaintiff

CM
CP51623
10/13/10
11:45AM

COPY
OCT - 8 2010

IN THE SUPERIOR COURT OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| NANCY SANDIG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. PLINER OF FLORIDA, INC., a Florida corporation,<br><br>Defendant. | No. CV2010-096086<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Rule 30(a), Arizona Rules of Civil Procedure, Plaintiff Nancy Sandig, hereby demands trial by jury on all issues.

DATED this 8th day of October, 2010.

SACKS TIERNEY P.A.

By: _Adrian L. Barton_
Adrian L. Barton
Attorneys for Plaintiff

**ORIGINAL** of the foregoing filed
this 8th day of October, 2010, with:

Clerk of the Court of the
Maricopa County Superior Court
101/201 W. Jefferson Street
Phoenix, Arizona 85003

By: _Silvia Miranda_

773365

1  Sharon S. Moyer (No. 013341)
   Sharon.S.Moyer@SacksTierney.com
2  Adrian L. Barton (No. 025359)
   Adrian.Barton@SacksTierney.com
3  SACKS TIERNEY P.A.
   4250 N. Drinkwater Blvd., 4th Floor
4  Scottsdale, AZ 85251-3693
   Telephone: 480.425.2600
5  Facsimile: 480.970.4610.

6  Attorneys for Plaintiff

CM
CPS1623
10/13/10
11:45 AM

7           IN THE SUPERIOR COURT OF ARIZONA
8           IN AND FOR THE COUNTY OF MARICOPA

| NANCY SANDIG, an individual, | |
|---|---|
| Plaintiff, | No.  CV2010-096086 |
| v. | |
| DONALD J. PLINER OF FLORIDA, INC., a Florida corporation, | SUMMONS  IF YOU WANT THE ADVICE OF A LAWYER, YOU MAY WISH TO CONTACT THE LAWYER REFERRAL SERVICE AT 602-257-4434 OR ON-LINE AT WWW.LAWYERFINDERS.ORG. LRS IS SPONSORED BY THE MARICOPA COUNTY BAR ASSOCIATION |
| Defendant. | |

THE STATE OF ARIZONA TO THE DEFENDANT:

Donald J. Pliner International, Inc.
10800 NW 97th Street, Suite 103
Miami, Florida 33178

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the state of Arizona -- whether by direct service, by registered or certified mail, or by publication -- you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where service of process is upon the Arizona Director of Insurance as an insurer's agent to receive service of legal process against it in this state; then the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of

773387

Arizona is complete 30 days after the filing of the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. ARS §22-213, RCP 4; ARS §§20-222, 28-502, 28-503.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must either appear in person or file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorneys. RCP 10(d); ARS §12-311; RCP 5; ARS §§22-215, 22-216.

THE NAME AND ADDRESS of Plaintiff's attorney is:

Sharon S. Moyer, Esq.
Adrian L. Barton, Esq.
SACKS TIERNEY P.A.
4250 North Drinkwater Blvd. 4th Floor
Scottsdale, Arizona 85251-3647

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding.

SIGNED AND SEALED this date: _____ October, 2010.   COPY

MICHAEL K. JEANES

OCT - 8 2010

By: _____
Deputy Clerk

773387

2